UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

CRYSTAL BEASLEY,

                         Petitioner,

                                                    DECISION AND ORDER

-vs-
                                                    6:18-CV-6358 CJS

JOSEPH JOSEPH,

                         Respondent.

—————————————————————————

INTRODUCTION

Petitioner Crystal Beasley ("Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her convictions after a jury trial, in New York State Supreme Court, Livingston County, for Assault in the First Degree (New York Penal Law § 120.10[1]) and Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01 [2]).   The Petition purports to assert four claims: (1) violation of Sixth Amendment right to effective assistance of trial counsel; (2) violation of Fifth Amendment right against self-incrimination; (3) violation of Sixth Amendment right to confront witnesses; and (4) violation of the "right to a fair trial."   For the reasons explained below, the petition for a writ of habeas corpus is denied.

BACKGROUND

As mentioned above, following a jury trial in New York State Supreme Court, Livingston County, Petitioner was convicted of Assault in the First Degree and Criminal Possession of a Weapon in the Fourth Degree.   Evidence at trial indicated that Petitioner stabbed another woman with a knife multiple times at a residence where the two women had spent the day together drinking alcohol with the victim's father.   The stab wounds penetrated the victim's pericardium and left lung.   The victim testified that Petitioner stabbed

her, and the victim's neighbors testified that Petitioner admitted to them that she had stabbed the victim, and that she knew how to stab a person without causing too much damage.[1]  The victim's testimony, as well as the medical evidence and other physical evidence, indicated that the Petitioner repeatedly stabbed the unarmed victim from behind as she was walking away from Petitioner.[2]  Several hours after the stabbing, while the victim lay in bed bleeding,[3] Petitioner placed a 911 call requesting an ambulance for someone with a puncture wound, but when the 911 dispatcher asked how the injury had occurred Petitioner hung up the phone.  Approximately twenty minutes after the first 911 call, Petitioner called 911 again and claimed that she had been assaulted.  The neighbors eventually drove the victim to the hospital where she was interviewed by police and identified Petitioner as her attacker.  When officers later went to the victim's residence, they found Petitioner still there, with the bloody knife in her pocket and the victim's blood on her hand, shoes and clothing.  Petitioner stated that she had been assaulted by someone.  After giving *Miranda* warnings, an officer asked Petitioner to explain what had happened.  Petitioner made a statement in response, though she eventually declined to sign the statement and requested an attorney.  The statement indicated, among other things, that Petitioner had possessed a knife, that she and the victim had argued, and that the victim had somehow become injured, though Petitioner denied stabbing her.  Notably, the statement says nothing about anyone attempting to assault Petitioner, though it indicates that at some point the victim "tried to push" Petitioner because she was upset that Petitioner would not let her use a cell phone.  Petitioner's statement indicates, however, that the incident did not escalate any further.[4]  Prior to trial Petitioner

---

[1] State Court Record at p. 87 ("Crystal stated that she did stab her, but not where it would cause any damage, because she knows how to stab someone without it being life threatening.").

[2] The evidence indicated that Petitioner held the knife in her left hand and, reaching from behind, stabbed the victim under her left breast.  The victim indicated that Petitioner stabbed her without warning as she was walking from the living room into the kitchen, which is where a trail of blood began.

[3] It appears that the victim, who had been drinking, initially underestimated the severity of her wounds.

[4] *See*, State Court Record at p. 81 ("Alishia tried to push me but I just grabbed my shit [[(knife and cell

unsuccessfully attempted to have her statement suppressed, claiming that she had been too intoxicated to make a voluntary statement, or, alternatively, that she had asked for an attorney before making the statement.[5]  The trial court denied the application based on the testimony of the officer who took the statement, who indicated that although Petitioner had smelled of alcohol and been rambling in her speech, she had not seemed to be intoxicated. Petitioner did not testify at the suppression hearing or trial.   The trial court sentenced Petitioner to twelve years in prison on the assault conviction and to one year on the weapons conviction, to run concurrently.  The sentencing transcript indicates that Petitioner committed the instant crimes approximately one month after moving to New York from North Carolina, where she had a lengthy criminal record.

Following the conviction and prior to sentencing, Petitioner filed a motion pursuant to NY CPL 330.30 to set aside or modify the verdict.  The motion was based on a handwritten statement from a woman who reportedly heard the victim say, long after the assault and after the victim had been released from the hospital, that on the evening of the stabbing it had been her intent to attack Petitioner because she was angry that Petitioner was not romantically interested in her father.  The statement was notarized but not sworn, and the witness expressly indicated that she was not willing to make the same statement in court under oath.  Petitioner nevertheless argued that this information was relevant and could have helped her establish a justification defense.  The trial court rejected that claim.

On direct appeal, new appellate counsel submitted a brief alleging only that the trial court had improperly instructed the jury concerning the order in which it should consider the assault counts of the indictment.  Petitioner also submitted a *pro se* supplemental brief asserting the following errors: 1) the verdict was contrary to the weight of the evidence; 2)

---

phone)] and that was it. She started to walk into the bedroom.  .  .  .  I then left and walked next door[.]").
[5] Evidently, Petitioner's claim about the timing of her request for an attorney was specious, since there was a recording of the interview which Petitioner never attempted to use in support of her suppression request.

defense counsel should have requested a jury instruction on intoxication and should have moved to dismiss the indictment as charging repugnant counts; 3) the trial court should have suppressed her statement to police because she made it while intoxicated; 4) the trial court erred in admitting the 911 calls since they were hearsay; 5) trial counsel was ineffective because he failed to argue that Petitioner was arrested without probable cause and that Petitioner's statement therefore should have been suppressed as "fruit of the poisonous tree," failed to investigate potentially exculpatory witnesses, failed to object to hearsay, failed to object to improper "expert" medical testimony by the victim, and failed to request a jury instruction on intoxication; and 6) the conviction was unjust since jurors were incapable of understanding the jury instructions.

The New York State Supreme Court, Appellate Division Fourth Department, denied the appeal.  With regard to the claim alleging a failure by counsel to request a jury instruction on intoxication, the Appellate Division held that there was insufficient evidence of record (concerning intoxication) to say whether such  an instruction would have been warranted or whether counsel had a strategic reason for not making such a request.  The Appellate Division indicated, therefore, that "the claim must be raised by way of a motion pursuant to CPL [§] 440.10," though Petitioner never pursued that suggestion.

Appellate counsel subsequently sought leave to appeal to the New York Court of Appeals solely on the issue of

> [w]hether the Appellate Division Fourth Department was correct when it concluded that defendant's claim of ineffective assistance of counsel was based upon matters outside of the record and must be raised by way of motion pursuant to CPL § 440.10.

(State Court Record at p. 366).  As part of that application, counsel acknowledged that the only real issue in the trial had been whether Petitioner had acted recklessly or intentionally when she stabbed the victim:

> Under the facts of this case, there was no question as to the identity of the defendant as the perpetrator, there was no question that the victim had suffered a serious physical injury, and there was no question that a dangerous instrument was used.  The only question was whether the defendant acted intentionally or recklessly. . . .  If the defendant was incapable of forming intent due to intoxication, then the mental state is reckless.  Trial defense counsel was ineffective by not requesting the intoxication instruction.

State Court Record at p. 370.[6]

Petitioner also filed a *pro se* supplementary application for leave to appeal asserting the following arguments: 1) the Appellate Division erred in finding that the conviction was supported by sufficient evidence; 2) the Appellate Division erred in finding that there was insufficient evidence of record to determine whether an intoxication instruction was warranted; 3) the Appellate Division erred in rejecting Petitioner's argument regarding the voluntariness of her statement to police; and 4) the Appellate Division erred by failing to expressly discuss the fifth point raised in Petitioner's *pro se* supplemental brief, regarding the competency of the jury.

The Court of Appeals denied the applications for further review.

Petitioner subsequently filed the subject habeas petition, proceeding *pro se*.  As mentioned earlier, the Petition purports to assert four claims: 1) ineffective assistance of trial counsel, based on counsel's failures to pursue a justification defense, to request a jury instruction on intoxication and to object to certain hearsay testimony by the victim; 2) violation of 5th Amendment based on the admission of statement taken in violation of *Miranda*; 3) denial of right to confrontation due to admission of hearsay testimony by the

---

[6] In this regard, appellate counsel acknowledged that if trial counsel had been successful in obtaining an instruction on intoxication and in convincing the jury that Petitioner had been intoxicated, Petitioner would have been convicted of Assault in the Second Degree rather than Assault in the First Degree.  Hence the Appellate Division's suggestion that trial counsel may have had a strategic reason for not requesting an intoxication instruction.

victim concerning the nature and extent of her injuries;[7] and 4) denial of right to a fair trial due to admission of the 911 calls, which Petitioner maintains were hearsay.

Respondent opposes the petition, and contends the following: 1) the claim that counsel was ineffective by failing to request an intoxication instruction is unexhausted but not procedurally defaulted; 2) the claim of ineffective assistance of counsel otherwise lacks merit since counsel provided effective assistance, and there was no prejudice in any event given the overwhelming evidence against Petitioner; 3) the claim that Petitioner's statement should have been suppressed lacks merit; 4) the claim that the trial court erroneously admitted hearsay evidence is unexhausted, non-cognizable on federal habeas review and meritless.[8]

Petitioner has submitted a traverse that generally reiterates the claims in the Petition.[9] Additionally, Petitioner states that she did not intend to assert unexhausted claims and that to the extent any of her claims are unexhausted, the Court should dismiss the unexhausted claim and determine the rest of the petition on the merits.

The Court has considered the parties' submissions and the entire record.

DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed her submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

---

[7] As respondent points out, hundreds of pages of the victim's medical records were introduced at trial, so any hearsay testimony by her in that regard was merely cumulative and hardly prejudicial.

[8] Respondent maintains that Petitioner is incorrect in claiming that the 911 calls were hearsay, since they were not offered for the truth of the statements contained therein.  At trial, the prosecutor stated that he was offering the calls as non-hearsay admissions by the Petitioner against her penal interest.

[9] Petitioner captioned this submission as a "Notice of Motion for Traverse," ECF No. 14.  It was unnecessary for Petitioner to make a motion, since the Court had already indicated in its Scheduling Order (ECF No. 6) that Petitioner could file a reply.

<u>Evidentiary Hearing Not Required</u>

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

<u>Section 2254 Principles</u>

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id.* (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —– U.S. ——–, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the

state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

<u>Unexhausted and Procedurally Defaulted Claims</u>

Respondent contends that part of Petitioner's ineffective assistance claim is unexhausted, namely, the portion alleging that counsel was ineffective by failing to request an intoxication instruction. Respondent maintains, though, that the claim is not procedurally barred since Petitioner could still assert the claim in state court by way of motion under CPL § 440.10. Respondent further contends that Petitioner's claim that the trial court violated her federal constitutional rights by admitting hearsay evidence is also unexhausted and procedurally barred, since on direct appeal she only relied on state evidentiary law to support this argument, not federal law. The applicable legal principles are clear:

If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claim[s] that he now urges upon the federal courts," *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir.2001), "to the highest court in the pertinent state," *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990).

When a claim has never been presented to a state court, a federal court may theoretically find that there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997). This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

***

Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits. . . . For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent). *Coleman*, 501 U.S. at 748-50, 111 S.Ct. 2546 (1991).

*Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001).

Where a claim is unexhausted but not procedurally barred, meaning that it could still be raised in state court, a district court may stay the action to allow the petitioner to exhaust the claim if, *inter alia*, it is not plainly meritless. *See, Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) ("Under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), a district court abuses its discretion in denying a stay to exhaust claims in a mixed

petition if the unexhausted claims are not plainly meritless, if the petitioner has good cause for failing to exhaust, and if the petitioner did not engage in abusive or dilatory litigation tactics. *Id.* at 277–78, 125 S.Ct. 1528."). However, where a stay is not appropriate, the district court may deny the unexhausted claim if it is meritless. *See, e.g., Wilson v. Graham*, No. 9:17-CV-0863 (BKS), 2018 WL 6001018, at *6 (N.D.N.Y. Nov. 15, 2018) ("A habeas court may, however, deny on the merits a habeas petition containing unexhausted claims if those claims are plainly meritless.").

*Trial Counsel's Failure to Request and Intoxication Instruction*

Respondent contends that this claim is unexhausted, though not procedurally barred. The Court agrees. The Appellate Division held that the claim was based on matters outside of the record and needed to be raised in a § 440.10 motion. Petitioner asked the Court of Appeals to review that determination, but it declined to do so, and Petitioner never subsequently brought a § 440.10 motion. Consequently, the Court finds that the claim is unexhausted but not procedurally barred. *See, e.g., Rios v. Miller*, No. 1:17-CV-02256(ALC), 2020 WL 4003607, at *3 (S.D.N.Y. July 15, 2020) ("Here, the Appellate Division held that because petitioner's claims involve matters outside, or not fully explained by, the record, including matters of strategy and since defendant has not made a CPL 440.10 motion, the merits of the ineffectiveness claims may not be addressed on appeal. Petitioner was therefore required to proceed to pursue a 440.10 motion to exhaust his ineffective assistance of counsel claim. . . . A Section 440.10 petition remains an available state court review. Indeed, such action, which is not time limited, remains available. *See* CPL § 440.10(1) ("At any time after the entry of a judgment...."). Accordingly, petitioner's claim of ineffective assistance of counsel is unexhausted and not properly before this court on federal habeas review.") (citations and internal quotation marks omitted).

In response to Respondent's arguments concerning this claim, Petitioner offers various reasons why she thinks the Appellate Division was incorrect to find that the claim involved matters outside of the record and needed to be raised in a § 440.10 motion. However, these arguments lack merit and do not alter the fact that the claim is unexhausted. Alternatively, Petitioner indicates that insofar as the claim is unexhausted the Court should dismiss it and consider only the exhausted claims.  Petitioner has not requested that the Court hold the petition in abeyance to allow her to return to state court to exhaust any unexhausted claims, and indeed she shows no intention of ever returning to state court to pursue this claim, despite having been advised to do so by the Appellate Division more than four years ago.[10]   Accordingly, the Court grants Petitioner's request and dismisses the unexhausted aspect of the ineffective counsel claim involving counsel's failure to request an intoxication instruction.[11]

*Denial of a Fair Trial Due to Admission of Hearsay*

Respondent further maintains that the claims concerning alleged errors by the trial court in admitting hearsay (i.e., the victim's testimony about her injuries, etc., and the 911 calls) are unexhausted and procedurally barred, since Petitioner's appeal challenged these alleged errors only on state-law evidentiary grounds, and since she is now barred by state procedural rules from raising those issues as a federal constitutional claim in a new state-court proceeding.

Respondent's argument is not entirely correct, since Petitioner did make a federal constitutional argument concerning the admission of hearsay as part of her direct appeal.

---

[10] The Appellate Division's decision is dated February 10, 2017.  For reasons known only to her Petitioner has made no effort in the ensuring four years to pursue the claim in a § 440.10 application.

[11] Although there was little if any evidence at trial that Petitioner was intoxicated at the time of the stabbing, the Court declines to say that the claim is plainly meritless (Respondent has not argued that), nor would it be appropriate to dismiss the entire petition without prejudice since the statute of limitations for filing a § 2254 petition has now run.

In that regard, Petitioner has complained about the admission of two types of hearsay:  1) the testimony by the victim containing hearsay (concerning her injuries, her medical treatment, and what other persons may have been thinking); and 2) the 911calls.  In her submissions to the Appellate Division Petitioner argued that the admission of the 911 calls was improper under state evidence law, without referencing federal law or the U.S. Constitution.  On the other hand, Petitioner argued that the admission of the victim's hearsay testimony violated the 6th Amendment Confrontation Clause.  However, Petitioner did not make a constitutional argument concerning either type of hearsay in her application for leave to appeal to the Court of Appeals.  Consequently, the Court agrees with respondent that any constitutional argument concerning the admission of hearsay by the trial court is unexhausted. *See, Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010) ("Exhaustion requires that the prisoner 'fairly present' the federal claim 'in each appropriate state court (including a state supreme court with powers of discretionary review).' *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (internal quotation marks and citation omitted). A prisoner has not fairly presented a federal claim before a state court if the federal claim is not mentioned in the prisoner's state court brief. *See id.* at 32, 124 S.Ct. 1347.").  Such claims, which concern evidentiary rulings by the trial court on the record, are also now procedurally barred under New York law since they could have been raised in Petitioner's direct appeal.  It would therefore be futile for Petitioner to attempt to raise them in a new § 440.10 motion.[12]  Accordingly, the claims are

---

[12] *See, Jackson v. Conway*, 763 F.3d 115, 143–44 (2d Cir. 2014) ("Jackson has no further state avenues in which to press this issue because he has completed his direct appeal and the nature of the claim is apparent from the face of the record, meaning that he would be barred from raising it in a motion to vacate the judgment. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (stating that the court "must deny" a § 440.10 motion when sufficient facts appear on the record to permit appellate review of the claim and the defendant unjustifiably failed to raise that issue on direct appeal); *see also Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir.2003) (applying section 440.10(2)(c) to claims raised for the first time in federal habeas petition). For these reasons, we deem this issue exhausted but procedurally defaulted, *see Sweet*, 353 F.3d at 140, and do not consider it when assessing the prosecutorial misconduct claim.") (footnote omitted).

procedurally defaulted.   Moreover, Petitioner has not attempted to make the necessary

showing (that there was cause for the default and prejudice, or that failure to consider the

claim will result in a miscarriage of justice because she is actually innocent) that would allow

the Court to consider the defaulted claims.   Nor does the record support such relief.

Consequently, Petitioner's constitutional claims concerning the admission of hearsay by the

trial court are dismissed as procedurally defaulted.

To briefly review, the subject Petition purports to assert four claims: 1) ineffective

assistance of trial counsel, based on counsel's failure to pursue a justification defense, his

failure to request a jury instruction on intoxication and his failure to object to certain hearsay

testimony by the victim; 2) violation of due process based on the admission of Petitioner's

statement to police; 3) denial of right to confrontation due to admission of hearsay testimony

by the victim;[13] and 4) denial of right to a fair trial due to admission of the 911 calls.  Based

on the discussion above, Claims 3) and 4) are dismissed as procedurally defaulted, and the

unexhausted part of Claim 1) (ineffective assistance based on failure to request intoxication

instruction) is dismissed/voluntarily withdrawn.   The remaining claims are: 1) ineffective

assistance of trial counsel, based on counsel's failure to pursue a justification defense and

his failure to object to certain hearsay testimony by the victim; and 2) violation of Petitioner's

5th Amendment rights based on the admission of Petitioner's statement to police in violation

of *Miranda*.  The Court will now consider the merits of the remaining claims.

<u>Ineffective Assistance of Counsel</u>

The familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for

evaluating an ineffective assistance of counsel claim has two prongs. The first

requires showing that counsel's performance "fell below an objective standard of

---

[13] As respondent points out, hundreds of pages of the victim's medical records were introduced at trial, so any hearsay testimony by her in that regard was merely cumulative and hardly prejudicial.

reasonableness." *Id.* at 688, 694. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). Fulfilling the second prong of an ineffective assistance claim requires a showing of prejudice which translates to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner*, 417 F.3d at 319 (citing *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004)).  "Without proof of both deficient performance and prejudice to the defense, the Supreme Court has said, it cannot be shown that the conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the conviction should therefore stand." *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (citations omitted).

In this context, "'[s]trategic choices made by counsel after thorough investigation ... are virtually unchallengeable," and there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland* at 104 S.Ct. 2052).

> In considering the quality-of-representation prong, *i.e.*, whether counsel's performance fell below an objective standard of reasonableness, a court must bear in mind both that counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process, and that counsel must have wide latitude in making tactical decisions.  Thus, the court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time, and must indulge

14

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance.

*Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (citing *Strickland*, internal quotation marks omitted).

Here, the Court finds that Petitioner has not established either prong of the *Strickland* test.  To begin with, counsel was not deficient for failing to pursue a justification defense since the evidence, including the belated unsworn submission filed along with the § 330.30 motion, does not support such a defense.  Rather, the evidence indicates that Petitioner stabbed the unarmed victim from behind as the victim was walking away from Petitioner.  There is simply no indication that Petitioner was being threatened, let alone threatened with serious harm, at the time of the stabbing.  Nor was counsel deficient for failing to make more objections (counsel made numerous hearsay objections throughout the trial) during the victim's testimony, especially considering that the hearsay aspects of that testimony were either merely cumulative of the medical evidence or  irrelevant to Petitioner's guilt or innocence.  In sum, the Court has considered all of Petitioner's arguments and finds that she has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness.

The Court further finds that Petitioner has not demonstrated that she suffered the required prejudice from counsel's alleged errors.  Instead, the Court finds, based on the overwhelming strength of the prosecution's case, that Petitioner has not shown a reasonable probability that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *See, Gersten v. Senkowski*, 426 F.3d at 611 ("A reasonable probability is a probability sufficient to undermine confidence

in the outcome.  In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors.  We must keep in mind that a verdict or conclusion only weakly supported by the record is more likely to have been affected by counsel's errors. Conversely, where there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus.") (citations omitted).

Nor has Petitioner otherwise shown that the state court's ruling denying the ineffective-assistance claims is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See, Henry v. Poole*, 409 F.3d 48, 67 (2d Cir. 2005) ("[A] petitioner whose claim is that he received ineffective assistance of counsel not only must satisfy the *Strickland* standard but also must show that the state court's rejection of his claim either was contrary to *Strickland* or was an unreasonable application of *Strickland*[.]") (citations omitted).

For these reasons, the ineffective assistance claim is denied.

### Waiver of *Miranda* Rights

Petitioner contends that her 5th Amendment rights were violated by the admission of her statement to police, because at the time she made the statement she was too intoxicated to make a knowing and voluntary waiver of her *Miranda* rights.  The applicable legal principles are well settled:

Alleged *Miranda* violations implicate a petitioner's Fifth Amendment rights against self incrimination and Fourteenth Amendment rights to due process. *Withrow v. Williams*, 507 US. 680, 688 (1993). Thus, law enforcement is subject to

> an obligation to follow certain procedures in their dealings with the
> accused[; specifically,] prior to the initiation of questioning, they
> must fully apprise the suspect of the State's intention to use his
> statements to secure a conviction, and must inform him of his
> rights to remain silent and to have counsel present if he so desires.

*Moran v. Burbine*, 475 U.S. 412, 420 (1986) (internal quotation marks omitted)
(citing *Miranda v. Arizona*, 348 U.S. 436, 468-70 (1966)). To determine
whether a waiver is effective, courts employ a "totality of the circumstances
[inquiry] ... to ascertain whether the accused in fact knowingly and voluntarily
decided to forgo his rights to remain silent and to have the assistance of
counsel." *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979) (citing *Miranda*, 348
U.S. at 475-77); *see also United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir.
1995) (per curiam) (citing *Moran*, 475 U.S. at 421) (holding that the respondent
"must show (1) that the relinquishment of the [petitioner's] rights was voluntary,
and (2) that the [petitioner] had a full awareness of the right being waived and
of the consequences of waiving that right"). Factors to be considered include:
"(1) the characteristics of the accused, (2) the conditions of interrogation, and
(3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894,
901-02 (2d Cir. 1988). "'[K]nowing' means with full awareness of the nature of
the right being abandoned and the consequence of abandoning it, and
'voluntary' means by deliberate choice free from intimidation, coercion, or
deception." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citing
*United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011), cert. denied, 565
U.S. 1230 (2012)).

> "An individual's mental state should be considered in the voluntariness inquiry
> ... [as] a person [who] is ... drugged or otherwise lacks capacity for conscious
> choice," cannot voluntarily waive his or her rights. *Taylor*, 745 F.3d at 24.
> However, the fact that an individual has ingested drugs or alcohol does not
> render his or her waiver *per se* involuntary; the relevant inquiry is whether the
> individual was able to exercise deliberate, conscious choice. *Scott v. Fisher*,
> 652 F. Supp. 2d 380, 431 (W.D.N.Y. 2009) (citing cases).

*Hill v. Colvin*, No. 9:16-CV-1301 (MAD), 2018 WL 736013, at *10–11 (N.D.N.Y. Feb.

6, 2018).

     Here, the police officer who took the statement from Petitioner testified at the

*Huntley* hearing that based on his training and experience as a police officer,

including specialized training in DWI enforcement, as well as his observations of

Petitioner, he did not believe that Petitioner was intoxicated.  The trial court ruled that the statement was admissible, since Petitioner was properly given her *Miranda* warnings and waived her rights before making the statement.[14] In this regard, the trial court manifestly found the officer's testimony credible, and that finding of fact is subject to a presumption of correctness, 28 U.S.C. § 2254(e)(1).  Petitioner has not come forward with clear and convincing evidence to rebut that finding. The Appellate Division held that "[t]here was no evidence at the suppression hearing that, at the time the defendant spoke to the police, she was 'intoxicated to the degree of mania, or of being unable to understand the meaning of her statements."[15]  The appellate court's statement in that regard was neither contrary to nor an unreasonable application of Supreme Court precedent.  In sum, Petitioner gave a statement that was obviously thought-out and self-serving, insofar as it falsely claimed that she had not harmed the victim, after which she declined to sign the statement and requested an attorney, thereby terminating the interview.   These facts do not indicate that Petitioner was too intoxicated to validly waive her *Miranda* rights, but, rather, indicate that she was able to exercise deliberate, conscious choice. *See, Hill v. Colvin*, 2018 WL 736013, at *11 ("As the state court found, these facts demonstrate a willful, competent, and coherent set of actions by petitioner. Further, the record fails to indicate any type of threat or coercion. Petitioner's decisions and resulting actions during this conversation with [the officer] do not support his contentions that he was too impaired to understand what was happening or properly waive his rights to remain silent or request counsel.").  Petitioner's *Miranda* claim is accordingly denied.

---

[14] State court transcript at pp. 38-39.
[15] State court record at p. 376.

CONCLUSION

Petitioner's "Motion for Traverse" (ECF No. 14) is denied as moot.  Petitioner's unexhausted claim that trial counsel was ineffective by failing to request an intoxication instruction is dismissed without prejudice.  Petitioner's procedurally defaulted claims based on admission of hearsay at trial are dismissed with prejudice.  The remainder of the § 2254 application is denied. The Clerk of the Court is directed to close this case.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
       January  19, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge